UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICTOR PERKINS,

               Plaintiff,                       **DECISION AND ORDER**

     v.                                 6:22-CV-06124 EAW

STRONG MEMORIAL HOSPITAL,

               Defendant.
_____

## INTRODUCTION

*Pro se* plaintiff Victor Perkins ("Plaintiff") filed this action asserting violations of 42 U.S.C. § 1983 and New York State law claims for intentional infliction of emotional distress ("IIED") and fraud, alleging that medical staff at Strong Memorial Hospital ("Strong" or "Defendant")[1] falsified medical reports, misstated the severity of an injury for which he sought treatment, and failed to treat the injury. (Dkt. 4). Presently before the Court is a motion to dismiss Plaintiff's amended complaint. (Dkt. 5). For the reasons that follow, Defendant's motion is granted, and Plaintiff is granted leave to amend the amended complaint.

## BACKGROUND

The following facts are taken from Plaintiff's complaint. As required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

---

[1] In its motion to dismiss, Defendant states that the University of Rochester is the proper defendant in this action. (Dkt. 5-3 at 4).

Plaintiff alleges that on November 7, 2009, he was assaulted by corrections officers while incarcerated at Great Meadow Correctional Facility.  (Dkt. 4 at ¶ 6).  As a result of the altercation, Plaintiff suffered a fracture to his lower left extremity.  (*Id.*).  On November 16, 2009, Plaintiff underwent surgery at Rome Memorial Hospital.  (*Id.* at ¶ 7).  The surgeon, Dr. Rubinovich ("Rubinovich"), subsequently informed Plaintiff that the medial malleolus bone was repaired using two screws and two washers.  (*Id.*).  Plaintiff alleges that Rubinovich misinformed Plaintiff as to the extent and severity of his injuries in that his medial malleolus bone was actually removed and replaced with two screws, two washers, a plate, and pins.  (*Id.*).  On October 13, 2012, Plaintiff, upon pressing on the medial malleolus area of his leg, found an indentation, at which time Plaintiff became aware of his injury.  (*Id.* at ¶ 9).

Plaintiff contacted Rome Memorial Hospital on May 12, 2013, and on February 3, 2014, requesting material related to his injury, to which the hospital "responded with a representation as to a material fact that was false."  (*Id.* at ¶ 10).  On May 18, 2018, an x-ray was performed on Plaintiff's lower left extremity at Strong.  (*Id.* at ¶ 14).  Plaintiff alleges that the x-ray image displayed to him as a result of this visit was the same "false image" that had been previously presented by "the State," Rubinovich, and Rome Memorial Hospital.  (*Id.*).  X-ray images were also taken at Rochester General Hospital, Highland Hospital, and George Washington University Hospital, each of which, Plaintiff alleges, displayed the same false image to him.  (*Id.* at ¶ 16).  Plaintiff alleges that in addition to presenting the false x-ray image to Plaintiff, Defendant failed to treat his injury.

(*Id.* at ¶ 18).  As a result of his injury, Plaintiff cannot stand or walk for more than two hours, run, jump, or lift more than 50 pounds without pain.  (*Id.*).

## DISCUSSION

## I.   Legal Standard on Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017).  To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations."). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984). "Even in a *pro se* case, however, 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)). A court may not "invent factual allegations that [plaintiff] has not pled." *Id*.

II.     **Plaintiff's § 1983 Claim Must Be Dismissed**

Plaintiff asserts, as a first cause of action, "VIOLATION OF CIVIL RIGHT" generally citing to the Fourteenth Amendment to the United States Constitution, § 1983, and the New York State Constitution (Dkt. 4 at 5) but does not specify the factual basis underlying this claim.  As a fourth cause of action, Plaintiff asserts a claim for deliberate indifference, which the Court construes as being brought pursuant to the Eighth Amendment of the United States Constitution and § 1983.  (*Id.* at ¶¶ 33-36).  These claims are duplicative, and the Court will treat the complaint as having asserted a single violation of § 1983 and the Eighth Amendment alleging that Defendant's staff were deliberately indifferent to, and failed to treat, Plaintiff's injury.

Because any claim under § 1983 is time-barred, and because Plaintiff has failed to allege that Defendant was a state actor, the claim must be dismissed.

A.     **Plaintiff's § 1983 Claim is Barred by the Statute of Limitations**

"In section 1983 actions, the applicable limitations period is found in the 'general or residual state statute of limitations for personal injury actions. . . .'" *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (alterations omitted) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).  A § 1983 action filed in New York is subject to a three-year statute of limitations.  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  Such a claim "ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994)).

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014); *see In re S. Afr. Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) (an exception to the rule that an affirmative defense cannot normally be decided on a motion to dismiss "is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." (citation omitted)).

Here, the untimeliness of the § 1983 claim appears on the face of the complaint, and raising the affirmative defense at this stage is appropriate. Plaintiff has asserted that Defendant was deliberately indifferent to his medical needs, and that he was denied adequate medical treatment with respect to the treatment of his ankle. Although Plaintiff identifies several occasions on which he was allegedly denied adequate medical treatment by various actors, he claims Defendant denied him adequate care by falsifying his medical records on May 18, 2018, when he had an x-ray taken of his lower left extremity. (Dkt. 4 at ¶¶ 2, 14). Further, Plaintiff alleges that he was previously aware of the fact that his medical records were false—in other words, that his medial malleolus bone had been removed, and records and providers who suggested otherwise were not telling the truth— as far back as 2012. (*Id.* at ¶¶ 8-9). Specifically, Plaintiff alleges that on September 17, 2012, while he was housed at Southport Correctional Facility, he received a medical document from Rome Memorial Hospital, stating that screws, washers, a plate and pins were "placed in his lower left extremity[,]" which "misinformed [Plaintiff] as to the full

extent and/or severity of his injury." (*Id.* at ¶ 8).  He further alleges that on October 13, 2012, he applied pressure to the area of his leg where he expected to find the medial malleolus bone, instead finding an indentation.  (*Id.* at ¶ 9).  Accordingly, by his own allegations, Plaintiff had knowledge of his injury before May 18, 2018, when Defendant allegedly provided him a false image of his lower left extremity.  Therefore, any claim against Defendant accrued no later than May 18, 2018.  However, Plaintiff did not file his complaint until March 16, 2022, approximately four years after May 2018, and beyond the three-year statute of limitations.

Plaintiff suggests in his complaint that "[w]here there is a series of continuing wrongs, the statute of limitations will toll to the last date on which a wrongful act is committed," and that May 6, 2020, "was the last date on which the plaintiff's injury was falsified[,]" which he contends makes this action timely.  (*Id.* at ¶ 17).  Plaintiff is referring to the fact that he allegedly complained of his ankle injury at George Washington University Hospital on May 6, 2020.  (*Id.* at ¶ 16).  "To assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy."  *Shomo*, 579 F.3d at 182 (quotations and citation omitted).  "This test screens out Eighth Amendment claims that challenge discrete acts of unconstitutional conduct or that fail to allege acts within the relevant statutory period that are traceable to a policy of deliberate indifference."  *Id.*

Here, Plaintiff has failed to articulate the existence of an ongoing policy, and there are no allegations connecting any alleged conduct by George Washington University

Hospital to conduct allegedly undertaken by Defendant.  Rather, Plaintiff appears to allege discrete instances—each involving different medical facilities between 2012 and 2020—in which he allegedly received false information about the status of his ankle.  Accordingly, Plaintiff has failed to plausibly allege any connection between the alleged conduct taken by Defendant and the conduct allegedly taken by George Washington University, such that he could articulate a continuing violation that would toll the statute of limitations until May 2020.  *See, e.g., Perkins v. Rome Mem'l Hosp.*, No. 6:20-CV-0196 (NAM/ATB), 2021 WL 1549987, at \*3 (N.D.N.Y. Apr. 19, 2021) (dismissing Plaintiff's § 1983 claim against Rome Memorial Hospital, which arose from alleged injury in 2009, as barred by three-year statute of limitations, and finding that statute of limitations was not tolled by "continuing wrong" doctrine, because alleged wrong identified by plaintiff, having occurred on May 6, 2020, "was not committed by Defendants").

Plaintiff also argues that because Defendant misled him and concealed facts material to his claim, the statute of limitations should be equitably tolled.  (Dkt. 7 at 8-9).  In support of this assertion, Plaintiff argues that he has stated a claim for fraudulent concealment against Defendant.  (Dkt. 7 at 8).  However, no such claim is listed as a cause of action in the amended complaint.  (Dkt. 4 at 5-7).  Even construing Plaintiff's fraud claim as a claim for fraudulent concealment, Plaintiff has not alleged non-conclusory facts that would support such a claim.  "The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages."   *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 124

(E.D.N.Y.2011) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 582 (2d Cir. 2005)).  Plaintiff has not alleged that he relied on any alleged fraudulent misrepresentations.  In this case, Plaintiff's own allegations indicate that he learned of his injury at least as early as September/October 2012—over five years prior to his interaction with Defendant on May 18, 2018.  (Dkt. 4 at ¶¶ 8-9).  Plaintiff does not allege that he undertook any action based upon alleged false information provided by Defendant.

Further, the cases on which Plaintiff relies neither support a finding that Plaintiff has alleged a cause of action for fraudulent concealment nor do they indicate that equitable tolling is warranted in this matter.  (*See* Dkt. 7 at 8-9 (citing *Forbes v. Eagleson*, 228 F.3d 471, 486-87 (3d Cir. 2000) (denying equitable tolling where plaintiff knew or reasonably should have known of hockey league players' union representative's misconduct); *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 231-32 (1959) (permitting tolling of statute of limitations where defendant misinformed plaintiff that he had seven years to initiate suit instead of three prescribed by Federal Employers' Liability Act); *Kamruddin v. Desmond*, 293 A.D.2d 714, 714-16 (2d Dep't 2002) (estopping defendant from asserting statute of limitations defense where defendant delayed producing medical records))).

Assuming Plaintiff's allegations are true, as the Court must at this stage, the Court cannot conclude that any alleged falsification of x-ray images or medical reports by Defendant in May 2018 precluded Plaintiff from learning of an injury that he had known of as early as September/October 2012 or that he relied on such representations.  Thus, the Court finds no basis to equitably toll the statute of limitations, and Plaintiff's § 1983 claim is untimely filed and must be dismissed.

**B.** **Plaintiff Has Failed to Plausibly Allege that Defendant is a State Actor**

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). Defendant argues that Plaintiff has not alleged facts that connect it to a state actor sufficient to allege a claim pursuant to § 1983. (Dkt. 5-3 at 9). For the reasons the follow, the Court agrees.

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991). As such, "[s]ection 1983 addresses only those injuries caused by state actors or those acting under color of state law." *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992).

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close

nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate" ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Although no allegations in the complaint support the inference that Defendant was a state actor, Plaintiff argues that Defendant was a "willful participant in joint activity with the state or its agents." [2] (Dkt. 7 at 7). However, he provides no factual allegations that would support an inference that Defendant is a private entity acting under color of state law or that Defendant had any connection to the state. *See Perkins v. Rochester Gen. Hosp.*, 6:21-CV-6690 EAW, 2022 WL 4138559, at *5 (W.D.N.Y. Sept. 12, 2022) (finding that Plaintiff's claim against Rochester General Hospital failed to identify relationship between the defendants and a state actor, although Plaintiff had alleged that the defendant acted "at the behest of the state"); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."). Accordingly, Plaintiff's § 1983 claim is dismissed for this reason as well.

### III. <u>Plaintiff's State Law Claims Must Be Dismissed</u>

The Court next turns to Plaintiff's state law claims for IIED and fraud. Plaintiff's IIED claim is subject to a one-year statute of limitations. *Forbes v. Merrill Lynch, Fenner*

---

[2] Although Plaintiff apparently quotes *Sniadach v. Family Fin. Corp. of Bayview*, 395 U.S. 337 (1969) without specific reference to the page cited, the case does not contain the quote nor does it stand for the proposition for which Plaintiff cites it. (*See generally id.*).

*& Smith, Inc.*, 957 F. Supp. 450, 455 (S.D.N.Y. 1997) ("It is well established under New York law that a claim of intentional infliction of emotional distress has a one-year statute of limitations." (citation omitted)); *see also Mariani v. Consol. Edison Co. of N.Y., Inc.*, 982 F. Supp. 267, 273 (S.D.N.Y. 1997) ("It is well established that the one-year statute of limitations set forth in CPLR § 215(3) for intentional torts is applicable to claims for intentional infliction of emotional distress."), *aff'd*, 172 F.3d 38 (2d Cir. 1998).   As explained above, Plaintiff's claim against Defendant is based on conduct which allegedly occurred in May 2018, and Plaintiff filed this action in February 2022.   Accordingly, as it is currently pleaded, Plaintiff's IIED claim is also time-barred.

Plaintiff has also failed to plausibly allege a claim for fraud.   "Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (quotations, citation, and alteration omitted).   Further, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiff is required to plead his fraud claim with particularity.   *See* Fed. R. Civ. P. 9(b).   To comply with Rule 9(b), Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (citation omitted).

Plaintiff alleges that on May 18, 2018, Defendant made a representation about Plaintiff's injury which it knew was false, and that Plaintiff relied on this representation.

(*See* Dkt. 4 at ¶ 30).  Plaintiff's allegation that he relied on the false representation is conclusory, and it is also contradicted by his allegations that he was aware of the fact that his medical records were false as far back as September/October 2012.  (*See id*. at ¶¶ 8-9).  Further, Plaintiff's general allegations that the information provided to him by Defendant was false fall far short of Rule 9(b)'s particularly requirement.  For these reasons, Plaintiff has failed to state a claim for fraud.

## IV.  <u>Leave to Amend</u>

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (internal quotation marks omitted); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (*pro se* plaintiffs, whether proceeding *in forma pauperis* or those who have paid the filing fee, should be permitted to amend the complaint at least once when it "gives any indication that a valid claim might be stated").  However, leave to amend pleadings is properly denied where amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

Although the Court previously granted Plaintiff's request to amend the complaint and is skeptical that Plaintiff will be able to correct the deficiencies identified herein, the Court will err on the side of caution and afford Plaintiff an opportunity to amend his claims.  As explained above, Plaintiff must provide additional, non-conclusory allegations

- 13 -

demonstrating how his claims are timely and how Defendant is a state actor within the meaning of § 1983. Accordingly, Plaintiff may file an amended complaint consistent with this Decision and Order **within 45 days of entry of this Order**. Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [the original complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, Plaintiff's amended complaint must include all necessary allegations so that it may stand alone as the sole complaint in the action.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 5) is granted. Plaintiff's claims are dismissed without prejudice, and he is granted leave to file an amended complaint consistent with this Decision and Order within 45 days of entry. The Clerk of Court is directed to send to Plaintiff with this Order a copy of the amended complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint. If Plaintiff fails to file an amended complaint within 45 days as directed above, the complaint is dismissed with prejudice, and the Clerk of Court is directed to close this case without further order.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      November 16, 2022
            Rochester, New York

- 14 -